MORROW, Presiding Judge.
 

 The offense is assault with intent to rape; punishment fixed at confinement in the penitentiary for a period of two years.
 

 Berta Nolan was the subject of the alleged assault. According to her testimony, she was the wife of Buffalo Nolan. Appellant lived about a quarter of a mile distant, and her nearest neighbor was about 200 yards. Appellant came to her house about four o’clock and had a conversation with her during which he said that her husband was intimate with his wife and suggested that he and the prosecutrix establish a like relation. She declined, and after some acts of familiarity, he caught her around the waist, pinned her arms and dragged her towards the shed room which was about seven feet from where they were sitting. She caught hold of the door and hollered for him to stop. He put his hand over her mouth and threw her down. She hit him in the nose when he released her. He asked her not to tell her husband. Blood came from his nose and fell upon her dress. She refused to accede to his request to refrain from telling her husband, and he then told her, “All right, tell him; I don’t give a durn; I have got Buffalo’s pocket change.” After making
 
 *589
 
 this remark, he got into his wagon, which was standing near the house, and drove away. He returned in about fifteen minutes; at which time there was another negro by the name of Curtis Jones on the premises, and the prosecutrix was standing in the door combing her hair. She had not mentioned the matter to Jones. Appellant, after hitching his mule, was asked what he had been shooting at, and he replied that he had shot a dog. Appellant entered the house and went into the back room with the prosecutrix where she stood before the bureau combing her hair. Appellant, leaning against the bureau, asked her not to tell her husband about the matter which .iust occurred. She said she would tell him, and appellant said; “All right, tell Buffalo; if he can live, I can too.” In the course of the conversation appellant told her that he would not do it again. After this conversation, appellant got on his mule and rode away. About twenty minutes later the husband of the prosecutrix came and she told him of the alleged assault. She said that while she was on the floor, appellant unbuttoned his pants and tried to pull her dress up, but that she did not see his private; that he was polite while talking to her. She also said that while the anpellant was-dragging her towards the shed room she hollered, “Manuel, turn me loose;” that he did turn her loose and that she hit him in the nose as soon as she got up.
 

 Bill Nolan, the father-in-law of the prosecutrix, testified that on the night of the alleged assault, his son, the husband of the prosecutrix, told him of the alleged assault and that he got the sheriff and went to the home of the prosecutrix, but that she would not tell what the appellant had done. The witness then took her off to one side and she told him about the assault. She showed him where blood had dropped from the appellant’s nose. There was blood on the table leg which was standing in the shed room, and also blood stains on the wall. The door facing was torn like it had been “gouged.”
 

 Appellant introduced evidence tending to show an alibi. He testified that he was a married man and the father of two children; that his wife was Melissa Hatcher; that he was acquainted with the prosecutrix and her husband before their marriage; that he often visited them thereafter and they visited his home; that on the day of the alleged assault he was hauling hay, and in passing the house of the prosecutrix, he stopped, leaving his team and wagon at the fence. While there the prosecutrix asked him if he knew that her husband and the appellant’s wife were criminally intimate. He said that he did not know it, but if that was so, why couldn’t he and the prosecutrix do likewise. She said that she would study about it, and he then sat down on her lap and kissed her. The front door of the room was open and two men passed. She told him to get up as some one might see them; that he then sat down in' a chair
 
 *590
 
 near her and kisses her a number of times. As she started towards the- shed room he followed her. He put his arms around her and she said, “stop,” and hit him in the nose. He let loose of her and his nose began to bleed. He did not afterwards touch her and did not throw her down on the floor. He asked her not to tell her husband, and that if she would not tell him, he would,not do it any more. When he returned, Curtis Jones was sitting on the front porch, and the prosecutrix was combing her hair and continued to do so, while he was talking to her and again requested her not to tell her husband; that Curtis Jones did not speak to the appellant further than to ask him what he had shot at. Appellant said he did not have a gun but had shot a dog at his house. He testified that he at no time intended to force her to have intercourse with him and was induced to put his arms around her by the statement that “she would think about it.” He denied that he used any force towards her. He said the windows and the doors of the house were open.
 

 The evidence is not deemed sufficient to show beyond a reasonable doubt that the assault was made with intent to rape. Many times this court has declared that to sustain a conviction for this offense the evidence must be such as to disclose a specific intent to accomplish his design by the use of such force a might reasonably be supposed to .overcome such resistance as might be exerted, considering the relative strength of the parties and the other attendant circumstances. House v. State, 9 Texas Crim. App. 568; Brown v. State, 27 Texas Crim. App. 330; and other cases cited in Branch’s Ann. Texas P. C., Secs. 1701 and 1710.
 

 The judgment is reversed and the cause remanded.
 

 Reversed and remanded.